

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-07-351-CV

BRENDA GRAY                                                    APPELLANT

V.

MARIA GLORIA NASH                                             APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

This is a life insurance case. The question before the court is whether a disputed portion of the policy's death benefit is payable to Appellant Brenda Gray—the insured's ex-wife and the policy's designated beneficiary—or to Appellee Maria Gloria Nash ("Gloria")—the insured's wife at the time of his death. We reverse the trial court's summary judgment in favor of Gloria and render judgment in favor of Brenda.

**Background**

The following facts are not in dispute. The decedent, Brent Nash, and Brenda were divorced in 1997. The divorce decree required Brent, as "additional child support," to purchase a life insurance policy with a death benefit of at least $60,000 and naming Brenda as irrevocable beneficiary as trustee for the benefit of Brent and Brenda's daughter, Amanda.

In July 1997, Brent purchased a life insurance policy from Pan-American Life Insurance Co. with a death benefit of $500,000 and designated Amanda as the beneficiary.

Brent married Gloria in 1998. In June 1998, Brent submitted a change of beneficiary form to Pan-American. The new beneficiary designation states that "$60,000.00 shall be paid to [Brenda]. The balance of the net proceeds, if any, shall be paid to [Gloria], wife." It is undisputed that Brent never again changed the beneficiary designation thereafter.

In July 2001, the divorce court issued its "Order in Suit to Modify Parent-Child Relationship and Motion for Enforcement," appointing Brent to serve as Amanda's primary joint managing conservator. The divorce court found that Brent was "current in all child support and medical support payment obligations" and ordered that Brent's child support obligation was terminated.

2

Brent died on October 14, 2006, in a motor vehicle accident. Gloria submitted his death certificate and a claim for payment of the full $500,000 death benefit to Pan-American in December 2006. Pan-American filed an interpleader action and deposited $60,460.27 (the proceeds plus interest) into the trial court's registry. Pan-American paid the rest of the death benefit to Gloria. By agreement of the parties, the trial court dismissed Pan-American from the suit and awarded it costs of $1,500 out of the funds in the registry.

Brenda and Gloria filed traditional cross-motions for summary judgment. The trial court denied Brenda's motion and granted Gloria's and awarded Gloria the $58,960.27 remaining in the court's registry. Brenda filed this appeal.

**Standard of Review**

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)*; Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). When both parties move for summary judgment and the trial court grants one motion and denies the other,

3

the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co.*, 164 S.W.3d at 661. The reviewing court should render the judgment that the trial court should have rendered. *Id*.

## Discussion

Brenda argues that she is entitled to the disputed policy proceeds because she is the policy's designated beneficiary. Gloria argues that she is entitled to the proceeds because the divorce court's July 2001 order appointing Brent as Amanda's primary joint managing conservator was the equivalent of a divorce decree and terminated Brenda's rights to the policy proceeds under family code section 9.301(a); Brenda had no insurable interest in Brent's life; family code section 154.015(f) imposes a constructive trust on the proceeds as excess child support payments; and failure of consideration, unjust enrichment, and estoppel preclude Brenda from collecting the proceeds.

**1. Under the express terms of the policy, Brenda is entitled to the disputed proceeds as the policy's designated beneficiary.**[1]

An insurance policy is a contract, and it is governed by the same rules of construction applicable to all contracts. *Balandran v. Safeco Ins. Co.*, 972

---

[1] Gloria does not argue otherwise; instead, she argues that other factors preclude Brenda's entitlement to the proceeds. Thus, we may curtail our analysis of this threshold issue.

4

S.W.2d 738, 740–41 (Tex. 1998). The court's primary goal is to give effect to the written expression of the parties' intent. *Id*. at 741.

In this case, the insurance contract provides as follows:

> We will pay the life insurance proceeds upon proof the Insured died prior to the Expiration Date. The proceeds will be paid to the Beneficiary.
>
>     . . . .
>
> You may change any Beneficiary at any time during the Insured's lifetime unless otherwise provided in the previous designation. The new designation must be made by a signed notice in satisfactory form to our Home Office. The change will take effect on the date the notice was signed subject to any action taken by us before recording the change.

It is undisputed that Brenda was the designated beneficiary of $60,000 of the policy proceeds at the time of Brent's death. Thus, under its contract of insurance, Pan-American was obligated to pay $60,000 to Brenda upon Brent's death.

The Texas Insurance Code compels the same result. Insurance code section 1103.102, captioned "Payment to Designated Beneficiary," mandates that a life insurance company must pay a policy's death benefit to the policy's designated beneficiary:

> Except as provided by Subsection (b) or (c), if an individual obtains a policy insuring the individual's life, designates in writing a beneficiary to receive the proceeds of the policy, and files the written designation with the company, the company shall pay the

5

proceeds that become due on the death of the insured to the designated beneficiary.

TEX. INS. CODE. ANN. § 1103.102(a) (Vernon 2007). Subsection (b) provides that the insurer is not required to pay the proceeds of the policy to a designated beneficiary under subsection (a) if the company receives notice of an adverse claim to the proceeds from a person who has a bona fide legal claim to all or part of the proceeds. *Id.* § 1103.102(b).[2] Thus, but for notice of Gloria's adverse claim to the proceeds, section 1103.102 obliged Pan-American to pay the policy proceeds to Brenda.

We therefore hold that under the express terms of the insurance contract, Brenda is entitled to the disputed proceeds.

**2. Family code section 9.301.**

Gloria argues that notwithstanding the plain language of the policy and insurance code section 1103.102, Brenda is not entitled to the proceeds by virtue of family code section 9.301(a). That section, captioned "Pre-Decree Designation of Ex-Spouse as Beneficiary of Life Insurance," provides in relevant part as follows:

(a) If a decree of divorce or annulment is rendered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of rendition, a provision in the

---

[2] Subsection (c) involves private placement contracts and is not relevant to this case. *See id*. § 1103.102(c).

6

policy in favor of the insured's former spouse is not effective unless:

> (1) the decree designates the insured's former spouse as the beneficiary;

> (2) the insured redesignates the former spouse as the beneficiary after rendition of the decree; or

> (3) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse.

> (b) If a designation is not effective under Subsection (a), the proceeds of the policy are payable to the named alternative beneficiary or, if there is not a named alternative beneficiary, to the estate of the insured.

TEX. FAM. CODE ANN. § 9.301 (Vernon 2006). Gloria contends that the divorce court's July 2001 order appointing Brent as Amanda's primary managing conservator was the equivalent of a divorce decree, thus triggering section 9.301 and nullifying Brent's 1998 designation of Brenda as beneficiary, and that the difference between "a decree of divorce or annulment" and an order modifying the parent-child relationship is merely a matter of semantics.

When construing a statute, our goal is to ascertain and give effect to the legislature's intent as expressed by the plain and common meaning of the statute's words. TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex. 2007); *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).

7

We begin with the statute's plain language because we assume that the legislature tried to say what it meant and, thus, that its words are the surest guide to its intent. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999). In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses, but we instead examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001); *Rodgers v. Comm'n for Lawyer Discipline*, 151 S.W.3d 602, 614 (Tex. App.—Fort Worth 2004, pet. denied). It is a well-settled rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. *See Quick v. City of Austin*, 7 S.W.3d 109, 123 (Tex. 1998); *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *Quick*, 7 S.W.3d at 123; *Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659.

The legislature specified that only divorce decrees and annulments nullify beneficiary designations; we must presume that it included those instruments, and excluded others, like orders modifying the parent-child relationship, for a purpose. *See* TEX. FAM. CODE ANN. § 9.301(a); *Quick*, 7 S.W.3d at 123; *Laidlaw Waste Sys., Inc.*, 904 S.W.2d at 659. Moreover, the legislature limited section 9.301's nullifying effect to designations made before the decree or

8

annulment, at a time when the insured and the designated beneficiary are still married—a circumstance not present in this case.

Because the unambiguous language of section 9.301 limits its application to life insurance policies issued before a trial court renders a decree of divorce or an annulment, we hold that it does not apply in this case and does not nullify Brent's designation of Brenda as beneficiary of the disputed proceeds.

**3.    Insurable interest.**

Gloria next argues that Brenda did not have an insurable interest in Brent's life at the time of his death.  In a closely-related argument, she contends that public policy prohibits Brenda from collecting the policy proceeds.

We recently addressed a similar question in *Allen v. United of Omaha Life Insurance Co.*, 236 S.W.3d 315, 322–23 (Tex. App.—Fort Worth 2007, pet. denied).  In *Allen*, the question was whether a limited partnership had a continuing insurable interest in the life of its former CEO after his association with the partnership ended. *Id.* at 319.  We noted that under the common law, the designated beneficiary of a life insurance policy must have an insurable interest in the insured's life when the policy is issued and when the insured dies. *Id.* at 322 (citing *Torrez v. Winn-Dixie Stores, Inc.*, 118 S.W.3d 817, 820 (Tex. App.—Fort Worth 2003, pet dism'd)).  Two policies drive the common law rule: A practice that encourages one to take another's life should be

9

prohibited, and no one should be permitted to wager on the life of another. *Id.* (citing *Torrez*, 118 S.W.3d at 820).

While the insurable-interest rule is still followed by Texas courts, the legislature has enlarged the class of persons deemed to have an insurable interest. *Id.* Under the insurance code, an individual may apply for a life insurance policy on the individual's own life and designate as beneficiary any individual. TEX. INS. CODE ANN. § 1103.054 (Vernon 2007); *Allen*, 236 S.W.3d at 323. Insurance code section 1103.053 further provides that a beneficiary of a life insurance policy who is designated in accordance with section 1103.054 has, at all times after the designation, an insurable interest in the life of the individual who is insured under the policy. TEX. INS. CODE ANN. § 1103.053; *Allen*, 236 S.W.3d at 323. Thus, the legislature has conferred an insurable interest on those persons named by an insured as beneficiaries in a policy on the insured's own life. *Allen*, 236 S.W.3d at 323.

The cases cited by Gloria for the proposition that a beneficiary must have a continuing insurable interest independent of the beneficiary designation predate insurance code sections 1103.053 and 1103.054 and their predecessor. *See* TEX. INS. CODE ANN. §§ 1103.053, .054 (effective June 1, 2003); Act of April 30, 1953, 53rd Leg., R.S., ch. 113, § 1, 1953 Tex. Gen. Laws 400, *repealed by* Act of May 22, 2001, 77 Leg., R.S., ch. 1419,

10

§ 31(a), 2001 Tex. Gen. Laws 4208; *Cheeves v. Anders*, 87 Tex. 287, 28 S.W. 274, 275 (Tex. 1894); *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125,128–29 (Tex. Comm'n App. 1942); *Drane v. Jefferson Standard Life Ins. Co.*, 139 Tex. 101, 161 S.W.2d 1057, 1059 (Tex. Comm'n App. 1942); *Whiteselle v. Nw. Mut. Life Ins. Co.*, 221 S.W. 575, 576 (Tex. Comm'n App. 1920), *overruled in part on other grounds by Womack v. Womack*, 141 Tex. 299, 172 S.W.2d 307, 308 (Tex. 1943). Gloria also cites *Torrez* as fundamentally indistinguishable from this case. But in *Torrez*, the insured's employer—not the insured himself—took out a policy on the insured's life. *Torrez*, 118 S.W.3d at 819. Thus, unlike this case, *Torrez* did not implicate the continuing-insurable-interest provisions of insurance code sections 1103.053 and 1103.054.

In *Allen*, we held that because the CEO, himself, applied for the life insurance policy on his own life and designated the partnership as the beneficiary, the partnership had, at the policy's inception and at all times thereafter, an insurable interest in the CEO's life, even after the CEO's relationship with the partnership ended. *Allen*, 236 S.W.3d at 323. Likewise, in this case, Brent, himself, applied for the life insurance policy on his own life and designated Brenda as a beneficiary. Thus, we hold that Brenda had a continuing insurable interest in Brent's life.

11

**4.     Effect of termination of Brent's child support obligation.**

Gloria next argues that because the life insurance policy was security for Brent's child support obligation under the 1997 divorce decree, and the 2001 order modifying the parent-child relationship terminated his child support obligation, the sole reason for designating Brenda as beneficiary was extinguished.  Gloria further argues that allowing Brenda to collect the disputed proceeds is tantamount to an excess child support payment, which Brenda would merely hold in constructive trust for Brent's estate.  *See* TEX. FAM. CODE ANN. § 154.015(f) (Vernon 2007) ("If money paid to the obligee for the benefit of the child exceeds the amount of the unpaid child support obligation remaining at the time of the obligor's death, the obligee shall hold the excess amount as constructive trustee for the benefit of the deceased obligor's estate until the obligee delivers the excess amount to the legal representative of the deceased obligor's estate.").

Implicit in Gloria's arguments are the notions that the only reason Brent designated Brenda as beneficiary was to comply with the divorce decree—a notion which Gloria calls an undisputed fact—and that he did not intend Brenda to receive any portion of the policy proceeds after the 2001 modification order. But Brenda *does* dispute these assertions, and the record is silent as to why Brent (1) designated Brenda as beneficiary in her individual capacity rather than

12

"as trustee for the benefit of the child" as ordered by the divorce decree and (2) never undesignated Brenda as beneficiary after the 2001 modification order terminated his child support obligation. There is no evidence in the record that Brent obtained life insurance coverage solely to comply with the divorce decree, and the only evidence of his intent regarding the disputed proceeds is his unconditional and unambiguous designation of Brenda as beneficiary. Therefore, the record does not support Gloria's argument that the policy proceeds are solely a form of child support, excess or otherwise.

Nor do the foreign cases Gloria cites support her argument that a beneficiary designation in favor of a former spouse is ineffective when the insured's child support obligation ends. In *Caracansi v. Caracansi*, the Connecticut court of appeals held that a divorce court erred by ordering a father to maintain a life insurance policy for the benefit of his children after they reached the age of majority because the insurance policy served solely as a means to secure payment of the father's child support obligations. 496 A.2d 225, 227–28 (Conn. App. Ct. 1985). Likewise, in *H.P.A. v. S.C.A.*, the Supreme Court of Alaska held that a divorce court could not order a father to maintain a life insurance policy for the benefit of his children past their ages of majority. 704 P.2d 205, 211 (Alaska 1985). In *Equitable Life Assurance Society v. Flaherty*, a federal district court in Alabama held that when a father

13

failed to obtain a divorce-court-ordered $10,000 life insurance policy for the benefit of his minor child as security for child support payments, his ex-wife was entitled to recover $10,000 for the benefit of the child from the only policy the father had at the time of his death, even though it named his second wife as beneficiary. 568 F. Supp. 610, 616 (D.C. Ala. 1983). In *In re Marriage of Weidner*, the Iowa supreme court held that a divorce court had the power to order a father to maintain an existing life insurance policy for the benefit of his minor children. 338 N.W.2d 351, 360 (Iowa 1983).[3]

Thus, all of the cases Gloria cites support a divorce court's power to order a parent to maintain life insurance for the benefit of the parent's minor children, and some of the cases recognize such insurance as security for the parent's support obligation. To this extent, they are consistent with Texas law. *See* TEX. FAM. CODE ANN. § 154.006(a) (recognizing trial court's authority to order that child support payments continue after obligor's death); *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (recognizing trial court's authority to order parent to maintain life insurance for benefit of minor children); *Niskar v. Niskar*, 136 S.W.3d 749, 759 (Tex.

---

[3] Gloria cites *Weidner* for the proposition that an order to maintain life insurance may be invalid to the extent that the amount of insurance required exceeds the insured's alimony or child support obligation. The case does not support or even discuss that proposition.

App.—Dallas 2004, no pet.) (same); *Grayson v. Grayson*, 103 S.W.3d 559, 563 (Tex. App.—San Antonio 2003, no pet.) (same). But none of the cases hold that termination of a child support obligation during the child's minority overrides a life insurance policy's beneficiary designation in favor of the insured's former spouse.

Finding no support for Gloria's argument in the record or the law, we hold that the termination of Brent's child support obligation in 2001 does not override his designation of Brenda, individually, as beneficiary of the disputed proceeds or result in an excess child support payment.

**5.     Gloria's remaining arguments.**

Gloria—without citation to any authority—argues (1) that failure of consideration and the doctrine of unjust enrichment preclude Brenda's recovery of the policy proceeds because the divorce decree was a contract between Brent and Brenda and Brenda failed to hold up her end of the bargain by serving as Amanda's primary managing conservator after 2001; (2) that Brenda is estopped from claiming the policy proceeds because she agreed in the divorce decree that Brent was obligated to fund the life insurance policy only so long as he was obligated to pay child support; and (3) that even if Brenda is entitled to the disputed proceeds, Gloria is entitled to at least one-half of the value of the policy premiums because Brent paid them with community property.

15

An appellate brief must contain appropriate citations to authorities. TEX. R. APP. P. 38.1(h), 38.2(a)(1). An argument may be waived if inadequately briefed. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994). Because Gloria cites no authority whatsoever in support of these arguments, we hold that she has waived them.

**6.    Allocation of costs awarded to Pan-American.**

Brenda argues that she is entitled to recover from Gloria the $1,500 in costs the trial court awarded to Pan-American out of the disputed proceeds. A party interpleading funds may be entitled to have his attorney's fees deducted from the funds. *Foreman v. Graham,* 693 S.W.2d 774, 778 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.). Generally, the ultimate burden between rival claimants should fall on the party whose unsuccessful claim rendered the interpleader necessary. *Id*. (citing *Monarch Tile Sales v. Frost Nat'l Bank*, 496 S.W.2d 254, 255–56 (Tex. Civ. App.—San Antonio 1973, no writ); *Givens v. Girard Life Ins. Co.*, 480 S.W.2d 421, 430 (Tex. Civ. App.—Dallas 1972, writ ref'd n.r.e.) (op. on reh'g)). But in this case, Brenda and Gloria specifically agreed in the "Joint Stipulations and Motion for Dismissal with Prejudice Regarding [Pan-American]" that "[a]s a disinterested stakeholder, Pan-American is entitled to recover its reasonable attorney[']s fees, costs, and expenses, paid out of the interpleaded funds . . . in the amount of $1,500.00."

16

Because Brenda agreed to pay Pan-American's fees and costs out of the interpleaded funds, we hold that the trial court did not err by so ordering.

## Conclusion

We sustain Brenda's sole issue. We reverse the trial court's judgment and render judgment in favor of Brenda for the remaining policy proceeds on deposit in the trial court's registry.

ANNE GARDNER
JUSTICE

PANEL B:   LIVINGSTON, HOLMAN, and GARDNER, JJ.

DELIVERED:  June 19, 2008