

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00181-CV

IN THE MATTER OF THE
GUARDIANSHIP OF BRYAN
ROMBOUGH, AN INCAPACITATED
PERSON

----------

### FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A probate court appointed Appellee Texas Department of Aging and Disability Services (TDADS) as guardian of the person of Bryan Rombough, an incapacitated person. His mother, Appellant Shirley Rombough, brings this appeal from that order. Because we hold that the probate court did not abuse its discretion by appointing TDADS as Bryan's permanent guardian of the person, we affirm the probate court's order.

---

[1]*See* Tex. R. App. P. 47.4.

## Background

On February 3, 2010, the Department of Family and Protective Services filed a petition for protection of a disabled person in an emergency in which it requested the court to appoint an attorney ad litem for Bryan, a TDADS client. The department further requested that the court order Bryan's removal to a care facility. It alleged that he was suffering from abuse or neglect presenting a threat to life or physical safety. The petition stated that Bryan, a thirty-year-old man, suffered from moderate mental retardation, type II diabetes, and thyroid problems. It alleged that he had called 911 over a hundred times in the past year, had been found wandering outside and looking in neighbors' windows, and had had multiple hospitalizations in the past twelve weeks. The department asserted that Bryan's father, Terry Rombough, had continually left him alone and unattended, had not provided a diabetic meal plan for him, and did not give him his medications as prescribed. The department stated that it had received three previous referrals regarding Bryan.

The department further alleged that a TDADS employee had gone to Bryan's home on February 2, 2010, to check on him, and upon the employee's arrival, Bryan told her that he did not feel well, wanted to go to the hospital, and did not want to remain with his father. Paramedics checked Bryan's blood sugar level and found it to be elevated. TDADS removed Bryan at that time.

The probate court appointed Appellee Robert M. Brownrigg as Bryan's guardian ad litem and Sharon Gabert as Bryan's attorney ad litem. On February

5, 2010, Brownrigg filed an application to have TDADS or, alternatively, any suitable person appointed as temporary guardian of the person for Bryan. Brownrigg also requested the probate court to make the appointment permanent. In explaining why Bryan's parents were not suitable, Brownrigg stated that Terry had been the primary caretaker for Bryan and had repeatedly failed and refused to properly supervise him and that Appellant had actual knowledge that Terry had failed and refused to properly supervise Bryan. The probate court granted the application for temporary guardianship of the person over Bryan and ordered that TDADS be appointed.

Appellant contested the application for permanent guardianship, objecting to the appointment of TDADS as guardian and requested that she be appointed instead. Brownrigg filed a motion for security for costs. The probate court granted the motion and ordered Appellant to give security for probable costs in the amount of $5,000 by June 4, 2010. Brownrigg subsequently filed a motion for additional security for costs. In response, Appellant filed an affidavit of inability to pay or give security for costs. After a hearing, the probate court granted Brownrigg's motion for additional security and ordered Appellant to give additional security in the amount of $10,000 on or before January 31, 2011, at 4:30 p.m. The order stated that if Appellant did not file the additional security by that time, Appellant's "pleadings are dismissed as of the time and date of said deadline."

3

On January 11, 2011, Appellant filed a motion for continuance, asserting the need to take the deposition of several witnesses. On January 14, 2011, Appellant's attorneys Thomas F. Dunn and Robert Courtney both filed separate motions to withdraw. The probate court granted Courtney's motion on January 21 and Dunn's motion on January 26.

On January 21, 2011, an associate judge held a hearing on Appellant's affidavit of indigence. The judge dismissed the affidavit at the conclusion of the hearing, finding that Appellant was not indigent "because she has [an] admitted income of $7,000.00 per month." Appellant appealed the ruling, and the probate court set a hearing for February 3, 2011.

Also on January 21, Appellant filed an amended motion for a continuance asserting that she was "not able to withstand the rigors of a two day or longer hearing due to her need for spinal treatment and surgery." She alleged that she was to undergo surgery at some point in the future and would be able to give the court documentation of the surgery after a January 24 doctor's appointment. Appellant also asserted her intention to take the depositions of witnesses due to previously scheduled depositions being postponed "in part due to the hospitalization of one of the witnesses," though she did not specify which witness or what information she hoped to obtain from the witness. She also asserted the need to have "additional potential evidence of abuse and diseases" relating to Bryan's medications "which need to be evaluated by experts." She asked that the hearing on the motion for permanent guardianship, which had been set for

4

February 8 and 9, be continued and rescheduled. The motion was not supported by an affidavit.[2]

On February 3, after consideration of Appellant's motion for continuance and on its own motion in light of inclement weather, the probate court continued the hearing on Appellant's affidavit of indigence until February 8, 2011, at 9:30 a.m., "with a trial on the merits to be held shortly thereafter unless one of [Appellant's] motions for continuance is granted." Also on February 3, Appellant filed a second motion for continuance stating that her doctor had scheduled her for surgery on February 8. She also asserted that she would be unable to hire new representation because "[n]o one will accept employment at this stage of the case."

On the morning of the February 8 hearing, Appellant filed a supplemental motion for continuance, asserting that she was at that time in the hospital awaiting surgery. The probate court held the hearing as scheduled, first addressing Appellant's affidavit of indigence. Brownrigg argued that Appellant's affidavit was defective on its face because Appellant stated in the affidavit that she had an income of $84,000 a year and her listed expenses, such as Internet and cable, cell phone, and twice-a-month travel to and from Arlington, Texas, were optional expenses. Brownrigg stated that Appellant did not have a constitutional right to Internet or cell phone service or to travel a certain number

---

[2]See Tex. R. Civ. P. 251 (providing that no continuance shall be granted "except for sufficient cause supported by affidavit").

5

of times. Brownrigg also stated that she claimed a homestead in a condominium that she was renting out at an amount that was less than her asserted costs for the unit. The probate court found that Appellant was not indigent and stated that Appellant's pleadings "either by operation of law or by my finding as of this moment, are all stricken."

The probate court then proceeded to hear the application for guardianship. Brownrigg called Denise Buchan, the court visitor program manager, and Jennifer Cross, a guardianship specialist with TDADS, to testify. At the conclusion of the hearing, the probate court granted the application for guardianship and appointed TDADS as permanent guardian of the person of Bryan.

Appellant filed a motion for new trial. She asserted that she had been unavailable for trial on February 8 for health reasons and that the evidence was legally insufficient to support the probate court's order. She further asserted that the probate court erred by ordering her to pay $10,000 in costs and for ordering it be paid by January 31. The probate court denied the motion, and Appellant filed this appeal.

**Analysis**

Appellant lists fifteen questions in her "Issues Presented" section, but some of the "issues" are abstract questions or are fact questions rather than legal

issues or points.[3]  Furthermore, some of the issues are not argued or even referenced elsewhere in Appellant's brief.  We shall address the issues that are discussed either in the arguments section of her brief or in her statement of facts.[4]  Appellant's second, fourth, seventh, eighth, ninth, eleventh, and twelfth issues are waived as inadequately briefed.[5]

In Appellant's first and fifth issues, she argues that the probate court erred by denying her motion for continuance because the court knew that she was undergoing a medical procedure at the time of trial and therefore should have granted the continuance.  A trial court does not abuse its discretion by denying a motion for continuance simply because a party is unable to be present at trial.[6]  A party must show both a reasonable excuse for not being present and that the party was prejudiced by his or her absence.[7]

---

[3]For example, Appellant's seventh "issue" asks, "Does [I]nternet and telephone service cost $10,000 per month?"

[4]*But see* Tex. R. App. P. 38.1(g) ("The brief must state concisely and *without argument* the facts pertinent to the issues or points presented.") (emphasis added).

[5]*See* Tex. R. App. P. 38.1(i); *Gray v. Nash*, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied) (deciding that issues were waived because of inadequate briefing).

[6]*One 1984 Ford, VIN No. 1FABP43F7EZ116686 v. State*, 698 S.W.2d 279, 282 (Tex. App.—Fort Worth 1985, no writ).

[7]*Erback v. Donald*, 170 S.W.2d 289, 291–92 (Tex. Civ. App.—Fort Worth 1943, writ ref'd w.o.m.).

Illness can constitute a reasonable excuse,[8] but no evidence before the probate court suggested that Appellant did not know of the hearing date when she scheduled her surgery or that Appellant's medical procedure was due to an emergency and could not be rescheduled. Appellant provided the court with a letter from her doctor, dated February 2, 2011, stating that Appellant's surgery had been scheduled for February 8, but nothing in the letter suggested that the surgery was an emergency that could not be postponed until after the hearing. Furthermore, the letter did not meet the requirements of an affidavit[9] and did not show or suggest that Appellant could not be present at the hearing without endangering her health.[10]

Furthermore, even if Appellant's apparent choice to have surgery on the day of the hearing constituted an illness excusing her presence, she does not make any argument about how she was prejudiced by her absence. Appellant

---

[8]*See Burke v. Scott*, 410 S.W.2d 826, 828 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.).

[9]*See* Tex. R. Civ. P. 251; *Olivares v. State*, 693 S.W.2d 486, 490 (Tex. App.—San Antonio 1985, writ dism'd) (stating that "[w]hile appellant did attach his own affidavit of the facts, he had no supporting affidavit from medical personnel stating it was impossible, from a medical standpoint, for him to appear in court"); *see also Morrison v. Cogdell*, No. 2-02-00261-CV, 2003 WL 21476243, at *2 (Tex. App.—Fort Worth June 26, 2003, no pet.) (mem. op.) (stating that letters from the appellant's doctors were not sufficient to warrant a continuance).

[10]*Cf. Burke*, 410 S.W.2d at 828 (reciting evidence showing that the appellant was so ill that he was physically and mentally unable to undertake his defense and that a key witness had suffered a heart attack and was confined to his home and holding that the trial court should have granted the appellant's motion for continuance).

did not argue in the probate court and does not argue in this court about what evidence she would have submitted at the hearing had she been there or any objections to evidence she would have made, or how she was otherwise prejudiced by not being present. And we note that the probate court took notice of Bryan's expressed preference to have his mother made his guardian, and Bryan's attorney ad litem cross-examined Buchan about why she did not recommend that Appellant be made Bryan's guardian and objected to the admission of some of Brownrigg's evidence. Appellant does not argue what more she would have or could have done if she had been present.

Appellant also asserts that her attorney "abandoned her essentially hours before the final hearing." But in fact her attorneys' motions to withdraw, filed on January 14, 2011, were granted on January 21 and 26, considerably more than "hours" before the February 8 hearing date. And if Appellant wished to rely on the absence of counsel to establish grounds for a continuance, she needed to show that her failure to be represented at trial was not due to her own fault or negligence.[11] She made no such showing. We overrule Appellant's first and fifth issues.

Appellant argues in her third issue that the probate court's denial of her motion for continuance on the ground that she did not present "detailed medical affidavits and records" was a violation of her constitutional right to privacy.

---

[11] *See State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984).

9

Appellant has not pointed this court to any place in the record that shows that the probate court denied her motion for continuance on the ground that she refused to provide detailed medical affidavits and records. She does direct the court to a page from the reporter's record showing that the probate court stated that the hearing would proceed without her as scheduled because Appellant had "been given proper notice" and "the Court has not received anything that would constitute good cause in the form of any kind of official medical information that she indeed is scheduled for surgery." But this remark does not indicate that the probate court ordered her to provide detailed medical records in violation of a constitutional right to privacy or that the court denied her motion because of her refusal to comply. Rather, the context in which the probate court made the statement after discussion with the attorneys present at the hearing shows that the probate court proceeded in Appellant's absence because it believed that she had adequate notice of the hearing and that, rather than her absence being caused by an emergency, Appellant had chosen to schedule her surgery for that day. Accordingly, we overrule Appellant's third issue.

In Appellant's tenth issue, she argues that the probate court abused its discretion when it denied her affidavit of indigence. She contends that her affidavit of indigence was uncontradicted. We agree that although her affidavit of indigence was *contested*, her affidavit was *uncontradicted*. But this argument does not help Appellant because not only did Brownrigg not contradict the figures set out in Appellant's affidavit, he relied on them to argue that Appellant was not

indigent. In other words, Appellant's uncontradicted affidavit of indigence established that she was in fact not indigent. The probate court agreed with Brownrigg, finding that Appellant was not indigent "because she has [an] admitted income of $7,000 per month, and the expenses described in [her affidavit of indigence] are elective, discretionary expenditures of disposable income."

A party who is unable to afford costs may file an affidavit of indigence in lieu of paying or giving security for costs.[12] Rule 145 of the rules of civil procedure defines a "party who is unable to afford costs" as a person who either (1) is "presently receiving a governmental entitlement based on indigency" or (2) "has no ability to pay costs."[13] Appellant made no assertion that she is receiving a government entitlement based on indigency. To otherwise show that she had no ability to pay costs, Appellant had the burden to establish by a preponderance of the evidence that she would be unable to pay the costs or give security for them if she really wanted to and if she made a good-faith effort to do so.[14] In

---

[12]Tex. R. Civ. P. 145(a).

[13]*Id.*

[14]*See Pinchback v. Hockless*, 139 Tex. 536, 539, 164 S.W.2d 19, 20 (1942).

determining whether a party has the ability to pay costs, a court must look to the facts as a whole.[15]

Appellant asserted in her affidavit that she has a monthly income of $7,000. She claimed expenses of $6,754 a month, but a number of these expenses are, as Brownrigg pointed out, optional. For example, Appellant asserted that she pays $924 a month for personal travel between McAllen and Dallas, $168 a month for a cell phone service plan, and $180 a month for cable and Internet service. Appellant was able to obtain loans for both her vehicle and for her condominium.[16] Thus, Appellant's own affidavit shows that she is not indigent. Appellant points to no other evidence in the record to establish her indigency.[17] Considering the record, we cannot say that the probate court abused its discretion[18] by sustaining Brownrigg's contest to Appellant's assertion of indigence.

---

[15]*Id.*; *Thomas v. Thomas*, 852 S.W.2d 31, 36–37 (Tex. App.—Waco 1993, no writ).

[16]*See Pinchback*, 164 S.W.2d at 20 (stating that "if a party has a credit rating that will enable him to borrow the money, . . . he should be required to pay the costs, or give security therefor").

[17]*See id.* (stating that when a party files an affidavit of indigence and it is contested, the burden of proof is on the applicant).

[18]*See Basaldua v. Hadden*, 298 S.W.3d 238, 241 (Tex. App.—San Antonio 2009, no pet.) (applying abuse of discretion standard to a trial court's determination of a contest to an affidavit of indigence).

Appellant asserts that Brownrigg's statements about her condominium and her right to a cell phone and Internet service were unsworn and therefore not competent evidence. But Brownrigg's statements were argument, not evidence. He merely made those statements in arguing that, on its face, the affidavit was defective.

Appellant further argues that Brownrigg did not establish that he was competent to opine about the real estate market. But Brownrigg did not offer an opinion about the real estate market. Instead, he simply pointed out that Appellant's own affidavit showed that she was renting out her condominium at an amount that did not cover the expenses that she listed for the unit. Thus, Appellant's affidavit on its face shows that she is renting out her condominium at a loss, just as Brownrigg stated to the probate court.

Appellant also argues that Brownrigg implied that she was voluntarily spending $10,000 a month on Internet and cell phone service rather than depositing $10,000 into the registry of the court. A review of the record shows that Brownrigg made no such argument, expressly or by implication. He merely pointed out that Appellant had listed expenses for Internet service and cell phone service and argued that these expenses were optional. We overrule Appellant's tenth issue.

In Appellant's sixth issue, she argues that the probate court erred by not permitting her to make the required $10,000 deposit or in failing to provide her sufficient time in which to do so. But Appellant has not directed this court to any

13

place in the record showing that the probate court refused to allow her to pay the $10,000 security for costs before striking her pleadings. And although Appellant claims she was not given sufficient time to provide the security for costs, the record does not support her complaint.

Rule 143 of the rules of civil procedure provides that if a probate court orders a party to provide security for costs and the party fails to comply "on or before twenty (20) days after notice that such rule has been entered," then that party's claims for affirmative relief "shall be dismissed."[19] The probate court signed the order requiring Appellant to provide security for $10,000 in costs on January 11, 2011, and her then-attorney approved it as to form, indicating that he at least had knowledge of the order. And Appellant does not claim that she did not receive notice of the order. The probate court dismissed her petition for failure to provide the security on February 8, 2011, more than twenty days after the date that the probate court signed its order and that Appellant's attorney approved it as to form. By rule, the probate court provided Appellant sufficient time to provide the required security. Appellant did not ask the probate court for additional time to provide the security.[20] Nor did Appellant provide the probate

---

[19]Tex. R. Civ. P. 143.

[20]*See Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982) (holding that the Clantons' due process rights were not violated by the dismissal of their claims for failure to file security within twenty days of receipt of notice to do so and noting that they took no action prior to the dismissal to secure an extension to give security).

court with any reason why she could not provide security within that time other than her affidavit of indigence, and this court has held that the probate court properly dismissed that affidavit. Finally, Appellant made no argument to the probate court (and makes none in this court) about why she needed more time. Accordingly, we overrule this issue.

In Appellant's thirteenth issue, she asserts that the probate court abused its discretion by basing its decision on no evidence. In her fourteenth issue, she argues that the probate court abused its discretion by basing its decision on insufficient evidence.

The nearest kin of an unmarried proposed ward is entitled to the guardianship if that person is eligible.[21] But the probate code also requires the probate court to appoint a guardian for a person other than a minor "according to the circumstances and considering the best interests of the ward."[22] The code further provides that a person may not be appointed guardian if that person is found unsuitable by the court.[23] Thus, if the evidence supported the probate court's finding that Appellant was not suitable as Bryan's guardian or that Appellant's appointment as Bryan's guardian of the person was not in his best

---

[21]Tex. Prob. Code Ann. § 677(a) (West 2003).

[22]*Id.*

[23]*Id.* § 681(8) (West Supp. 2011).

15

interest, the probate court did not abuse its discretion by finding that she was not eligible to serve.[24]

The record from the final hearing shows that Brownrigg produced evidence sufficient to support the probate court's finding that Appellant was not qualified to serve as guardian of Bryan's person. The evidence showed that Bryan has mild to moderate mental retardation and has diabetes, hypertension, and hyperthyroidism. The probate court heard testimony showing that Appellant was incapable of following visitation guidelines set up by TDADS, even upon court order to do so, and that Bryan's behavior improved when his contact with his parents was limited; that Bryan called 911 when he "was stressed" and had called 911 over a hundred times in the year prior to his removal; and that Appellant could not keep Bryan from calling 911 and had no concerns with him calling 911 repeatedly in order to have someone to talk to.

The probate court also heard evidence that Appellant had no concerns with Bryan being left alone and unsupervised for extended periods of time or with him being found wandering the neighborhood; that Appellant and Terry sometimes failed to disclose to Bryan's medical providers that he had diabetes and would falsely state that he had not had any prior anger outbursts, and that when his parents took him home from his group home for visits, they did not feed

---

[24] *See In re Guardianship of Alabraba*, 341 S.W.3d 577, 579 (Tex. App.—Amarillo 2011, no pet.) (reviewing guardianship appointment for abuse of discretion and holding that the trial court did not abuse its discretion by finding that the mother was not eligible to serve as her adult son's guardian).

him a diabetic diet and did not give him his diabetic medications. The probate court also had evidence before it showing that Bryan had at one point had his social security and Medicaid benefits suspended because his parents failed to notify the Social Security Administration of Bryan's new residence after removing Bryan from his group home.

Brownrigg produced evidence that Appellant and Terry had a history of placing Bryan in a group home and then removing him within a year, usually after the home recommended that the parents limit their visitation due to the staff noting a "link between the visiting and . . . [Bryan's] escalation with his psychiatric problems and their ability to manage him." Bryan had been forced to leave one group home because his parents failed to pay the bills, failed to follow visitation requirements, and would not release Bryan's medical records to the facility. The evidence showed that Bryan's parents had a pattern of not paying the bills for his care providers. Given the evidence before the probate court, we conclude that the probate court did not abuse its discretion by appointing TDADS rather than Appellant as guardian of Bryan's person.

In her arguments related to these issues, Appellant argues that the testimony of the two witnesses called by Brownrigg at the final hearing was incompetent and constitutes no evidence. Regarding Buchan, Appellant asserts that Brownrigg failed to establish her qualifications as an expert witness and that her testimony was therefore incompetent.

17

The probate court appointed Buchan as court visitor to visit and evaluate Bryan under section 648 of the probate code. Section 648 authorizes the probate court to appoint a court visitor to evaluate the proposed ward and to provide a written report.[25] The code does not require that the visitor be an expert, and Buchan did not testify as an expert. Buchan visited Bryan's home, interviewed Bryan's parents and employees of Bryan's current group home, and reviewed Bryan's medical records. Buchan based her recommendation and her testimony on the information she gathered during her investigation. At no point did Buchan assert an opinion as an expert or appear to be testifying as an expert. Accordingly, we overrule this part of Appellant's thirteenth and fourteenth issues.

Appellant further argues that Cross's testimony was incompetent because she never explained how she knew the information that she testified about. She complains about Cross's testimony about Bryan's living conditions with his parents, his hospital placements, why Bryan left particular hospitals, and "other items which occurred prior to the State's involvement." With respect to the events that "happened at various times during Bryan's prior treatment," Appellant argues that "[u]nless [Cross] was living with Bryan's parents in their home, she could not have possibly known the statement she was testifying about."

---

[25]Tex. Prob. Code Ann. § 648(b) (West 2003).

Cross testified that she had reviewed boxes of documents relating to Bryan's prior medical care, and her statements about his hospital placements and his reasons for leaving them were based on the documents that she reviewed. To the extent Appellant complains about any other parts of Cross's testimony, Appellant does not specify which part of Cross's testimony she believes is incompetent. We overrule of Appellant's thirteenth and fourteenth issues.

In Appellant's fifteenth and final issue, she asserts that the probate court abused its discretion by denying her motion for new trial. In her first argument under this issue, she contends that she met the requirements to have a post-answer default judgment set aside.

By the time the hearing on the merits began, the probate court had already struck Appellant's pleadings, making the case uncontested as to Appellant. But in any case, Appellant has not shown that she meets the requirements for setting aside a post-answer default judgment.

A default judgment should be set aside and a new trial granted if the defendant's failure to appear was not intentional or the result of conscious indifference but was the result of an accident or mistake; the motion for new trial

set up a meritorious defense; and granting the motion would cause no undue delay or otherwise injure the plaintiff.[26]

In her motion for new trial, Appellant did not make factual assertions that, if true, demonstrated that her failure to appear was an accident or mistake rather than intentional or the result of conscious indifference.[27] The record shows that she was aware of the hearing date but scheduled back surgery for that day. She did not assert in her motion that this surgery could not be postponed or that she could not schedule the surgery for any other day. She stated only that she was absent "for health reasons."

Even if Appellant had established the first *Craddock* element, she failed to establish a meritorious defense. Appellant's motion for new trial did not allege facts that, under the law, would constitute a defense to Brownrigg's claim that she was unsuitable to be appointed as Bryan's guardian and did not allege facts concerning Bryan's best interest in the appointment of his guardian. In fact, other than asserting that the hearing had been scheduled for February 8, 2011 and that she had been absent from the hearing for health reasons, she asserted no

---

[26]*Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); *see also Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) (applying *Craddock* to post-answer default judgments).

[27]*See In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006) (stating that "[t]he defendant's burden as to the first *Craddock* element has been satisfied when the factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff").

20

facts at all. Even if she had alleged such facts, she was required to support those facts with affidavits or other evidence but did not.[28]

Appellant further asserts that because of the probate court's denial of her motion for continuance, "[she] was unable to present her side of the story," and therefore the "merits would be served by a new trial." But as we stated above, the probate court did not abuse its discretion by denying Appellant's motion for continuance. Accordingly, we overrule Appellant's fifteenth issue.

In her conclusion and prayer, Appellant argues that the federal constitution provides "a fundamental liberty interest of natural parents in the care, custody, and management of their children." Appellant's argument does not relate to any of her issues. Because Appellant is pro se, however, we briefly address this argument to note that the cases cited by Appellant are inapplicable in the context of this case: one case discussed constitutional requirements in terminating parental rights;[29] one case upheld a preliminary injunction enjoining the enforcement of an Oregon statute that required parents to send their minor children to public school rather than to private school;[30] and the third, a case from the Georgia Supreme Court, discussed the constitutionality of Georgia's

---

[28] See Ivy, 407 S.W.2d at 214; see also Estate of Pollack v. McMurrey, 858 S.W.2d 388, 392 (Tex. 1993).

[29] Santosky v. Kramer, 455 U.S. 745, 102 S. Ct. 1388 (1982).

[30] Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary, 268 U.S. 510, 45 S. Ct. 571 (1925).

grandparent visitation statute, which granted any grandparent the right to seek visitation of a minor grandchild.[31]  We overrule this argument.

## Conclusion

Having overruled Appellant's issues, we affirm the probate court's order.

                    LEE ANN DAUPHINOT
                    JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED:  May 10, 2012

---

[31]*Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769 (1995).