02-11-181-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00181-CV

 

 


 
 
 In the Matter of the Guardianship of Bryan
 Rombough, an Incapacitated Person
 
 
  
 
 
  
 
 


 

 

----------

FROM Probate
Court No. 2 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
probate court appointed Appellee Texas Department of Aging and Disability
Services (TDADS) as guardian of the person of Bryan Rombough, an incapacitated
person.  His mother, Appellant Shirley Rombough, brings this appeal from that
order.  Because we hold that the probate court did not abuse its discretion by
appointing TDADS as Bryan’s permanent guardian of the person, we affirm the probate
court’s order.

Background

On
February 3, 2010, the Department of Family and Protective Services filed a
petition for protection of a disabled person in an emergency in which it
requested the court to appoint an attorney ad litem for Bryan, a TDADS client. 
The department further requested that the court order Bryan’s removal to a care
facility.  It alleged that he was suffering from abuse or neglect presenting a
threat to life or physical safety.  The petition stated that Bryan, a thirty-year-old
man, suffered from moderate mental retardation, type II diabetes, and thyroid
problems.  It alleged that he had called 911 over a hundred times in the past
year, had been found wandering outside and looking in neighbors’ windows, and
had had multiple hospitalizations in the past twelve weeks.  The department
asserted that Bryan’s father, Terry Rombough, had continually left him alone
and unattended, had not provided a diabetic meal plan for him, and did not give
him his medications as prescribed.  The department stated that it had received
three previous referrals regarding Bryan.

The department
further alleged that a TDADS employee had gone to Bryan’s home on February 2,
2010, to check on him, and upon the employee’s arrival, Bryan told her that he
did not feel well, wanted to go to the hospital, and did not want to remain
with his father.  Paramedics checked Bryan’s blood sugar level and found it to
be elevated.  TDADS removed Bryan at that time.

The probate
court appointed Appellee Robert M. Brownrigg as Bryan’s guardian ad litem and
Sharon Gabert as Bryan’s attorney ad litem.  On February 5, 2010, Brownrigg
filed an application to have TDADS or, alternatively, any suitable person
appointed as temporary guardian of the person for Bryan.  Brownrigg also
requested the probate court to make the appointment permanent.  In explaining
why Bryan’s parents were not suitable, Brownrigg stated that Terry had been the
primary caretaker for Bryan and had repeatedly failed and refused to properly
supervise him and that Appellant had actual knowledge that Terry had failed and
refused to properly supervise Bryan.  The probate court granted the application
for temporary guardianship of the person over Bryan and ordered that TDADS be
appointed.

Appellant
contested the application for permanent guardianship, objecting to the
appointment of TDADS as guardian and requested that she be appointed instead. 
Brownrigg filed a motion for security for costs.  The probate court granted the
motion and ordered Appellant to give security for probable costs in the amount
of $5,000 by June 4, 2010.  Brownrigg subsequently filed a motion for
additional security for costs.  In response, Appellant filed an affidavit of
inability to pay or give security for costs.  After a hearing, the probate
court granted Brownrigg’s motion for additional security and ordered Appellant
to give additional security in the amount of $10,000 on or before January 31,
2011, at 4:30 p.m.  The order stated that if Appellant did not file the
additional security by that time, Appellant’s “pleadings are dismissed as of
the time and date of said deadline.”

On
January 11, 2011, Appellant filed a motion for continuance, asserting the need
to take the deposition of several witnesses.  On January 14, 2011, Appellant’s
attorneys Thomas F. Dunn and Robert Courtney both filed separate motions to
withdraw.  The probate court granted Courtney’s motion on January 21 and Dunn’s
motion on January 26.

On
January 21, 2011, an associate judge held a hearing on Appellant’s affidavit of
indigence.  The judge dismissed the affidavit at the conclusion of the hearing,
finding that Appellant was not indigent “because she has [an] admitted income
of $7,000.00 per month.”  Appellant appealed the ruling, and the probate court
set a hearing for February 3, 2011.

Also
on January 21, Appellant filed an amended motion for a continuance asserting
that she was “not able to withstand the rigors of a two day or longer hearing
due to her need for spinal treatment and surgery.”  She alleged that she was to
undergo surgery at some point in the future and would be able to give the court
documentation of the surgery after a January 24 doctor’s appointment. 
Appellant also asserted her intention to take the depositions of witnesses due
to previously scheduled depositions being postponed “in part due to the
hospitalization of one of the witnesses,” though she did not specify which
witness or what information she hoped to obtain from the witness.  She also
asserted the need to have “additional potential evidence of abuse and diseases”
relating to Bryan’s medications “which need to be evaluated by experts.”  She
asked that the hearing on the motion for permanent guardianship, which had been
set for February 8 and 9, be continued and rescheduled.  The motion was not
supported by an affidavit.[2]

On
February 3, after consideration of Appellant’s motion for continuance and on
its own motion in light of inclement weather, the probate court continued the
hearing on Appellant’s affidavit of indigence until February 8, 2011, at 9:30
a.m., “with a trial on the merits to be held shortly thereafter unless one of
[Appellant’s] motions for continuance is granted.”  Also on February 3,
Appellant filed a second motion for continuance stating that her doctor had
scheduled her for surgery on February 8.  She also asserted that she would be
unable to hire new representation because “[n]o one will accept employment at
this stage of the case.”

On
the morning of the February 8 hearing, Appellant filed a supplemental motion
for continuance, asserting that she was at that time in the hospital awaiting
surgery.  The probate court held the hearing as scheduled, first addressing
Appellant’s affidavit of indigence.  Brownrigg argued that Appellant’s
affidavit was defective on its face because Appellant stated in the affidavit
that she had an income of $84,000 a year and her listed expenses, such as
Internet and cable, cell phone, and twice-a-month travel to and from Arlington,
Texas, were optional expenses.  Brownrigg stated that Appellant did not have a
constitutional right to Internet or cell phone service or to travel a certain
number of times.  Brownrigg also stated that she claimed a homestead in a
condominium that she was renting out at an amount that was less than her
asserted costs for the unit.  The probate court found that Appellant was not
indigent and stated that Appellant’s pleadings “either by operation of law or by
my finding as of this moment, are all stricken.”

The probate
court then proceeded to hear the application for guardianship.  Brownrigg
called Denise Buchan, the court visitor program manager, and Jennifer Cross, a
guardianship specialist with TDADS, to testify.  At the conclusion of the
hearing, the probate court granted the application for guardianship and
appointed TDADS as permanent guardian of the person of Bryan.

Appellant
filed a motion for new trial.  She asserted that she had been unavailable for
trial on February 8 for health reasons and that the evidence was legally
insufficient to support the probate court’s order.  She further asserted that
the probate court erred by ordering her to pay $10,000 in costs and for
ordering it be paid by January 31.  The probate court denied the motion, and
Appellant filed this appeal.

Analysis

Appellant
lists fifteen questions in her “Issues Presented” section, but some of the
“issues” are abstract questions or are fact questions rather than legal issues
or points.[3]  Furthermore, some of the
issues are not argued or even referenced elsewhere in Appellant’s brief.  We shall
address the issues that are discussed either in the arguments section of her
brief or in her statement of facts.[4]  Appellant’s second,
fourth, seventh, eighth, ninth, eleventh, and twelfth issues are waived as
inadequately briefed.[5]

In
Appellant’s first and fifth issues, she argues that the probate court erred by
denying her motion for continuance because the court knew that she was
undergoing a medical procedure at the time of trial and therefore should have
granted the continuance.  A trial court does not abuse its discretion by
denying a motion for continuance simply because a party is unable to be present
at trial.[6]  A party must show both a
reasonable excuse for not being present and that the party was prejudiced by
his or her absence.[7]

Illness
can constitute a reasonable excuse,[8] but no evidence before
the probate court suggested that Appellant did not know of the hearing date
when she scheduled her surgery or that Appellant’s medical procedure was due to
an emergency and could not be rescheduled.  Appellant provided the court with a
letter from her doctor, dated February 2, 2011, stating that Appellant’s
surgery had been scheduled for February 8, but nothing in the letter suggested
that the surgery was an emergency that could not be postponed until after the
hearing.  Furthermore, the letter did not meet the requirements of an affidavit[9]
and did not show or suggest that Appellant could not be present at the hearing
without endangering her health.[10]

Furthermore, even if Appellant’s apparent choice to have
surgery on the day of the hearing constituted an illness excusing her presence,
she does not make any argument about how she was prejudiced by her absence.  Appellant
did not argue in the probate court and does not argue in this court about what
evidence she would have submitted at the hearing had she been there or any
objections to evidence she would have made, or how she was otherwise prejudiced
by not being present.  And we note that the probate court took notice of
Bryan’s expressed preference to have his mother made his guardian, and Bryan’s
attorney ad litem cross-examined Buchan about why she did not recommend that
Appellant be made Bryan’s guardian and objected to the admission of some of
Brownrigg’s evidence.  Appellant does not argue what more she would have or
could have done if she had been present.

Appellant
also asserts that her attorney “abandoned her essentially hours before the final
hearing.”  But in fact her attorneys’ motions to withdraw, filed on January 14,
2011, were granted on January 21 and 26, considerably more than “hours” before
the February 8 hearing date.  And if Appellant wished to rely on the absence of
counsel to establish grounds for a continuance, she needed to show that her
failure to be represented at trial was not due to her own fault or negligence.[11] 
She made no such showing.  We overrule Appellant’s first and fifth issues.

Appellant
argues in her third issue that the probate court’s denial of her motion for
continuance on the ground that she did not present “detailed medical affidavits
and records” was a violation of her constitutional right to privacy.  Appellant
has not pointed this court to any place in the record that shows that the probate
court denied her motion for continuance on the ground that she refused to
provide detailed medical affidavits and records.  She does direct the court to
a page from the reporter’s record showing that the probate court stated that
the hearing would proceed without her as scheduled because Appellant had “been
given proper notice” and “the Court has not received anything that would
constitute good cause in the form of any kind of official medical information
that she indeed is scheduled for surgery.”  But this remark does not indicate that
the probate court ordered her to provide detailed medical records in violation
of a constitutional right to privacy or that the court denied her motion
because of her refusal to comply.  Rather, the context in which the probate
court made the statement after discussion with the attorneys present at the
hearing shows that the probate court proceeded in Appellant’s absence because
it believed that she had adequate notice of the hearing and that, rather than
her absence being caused by an emergency, Appellant had chosen to schedule her
surgery for that day.  Accordingly, we overrule Appellant’s third issue.

In
Appellant’s tenth issue, she argues that the probate court abused its
discretion when it denied her affidavit of indigence.  She contends that her
affidavit of indigence was uncontradicted.  We agree that although her affidavit
of indigence was contested, her affidavit was uncontradicted.  But
this argument does not help Appellant because not only did Brownrigg not
contradict the figures set out in Appellant’s affidavit, he relied on them to
argue that Appellant was not indigent.  In other words, Appellant’s
uncontradicted affidavit of indigence established that she was in fact not
indigent.  The probate court agreed with Brownrigg, finding that Appellant was
not indigent “because she has [an] admitted income of $7,000 per month, and the
expenses described in [her affidavit of indigence] are elective, discretionary
expenditures of disposable income.”

A
party who is unable to afford costs may file an affidavit of indigence in lieu
of paying or giving security for costs.[12]  Rule 145 of the rules
of civil procedure defines a “party who is unable to afford costs” as a person
who either (1) is “presently receiving a governmental entitlement based on
indigency” or (2) “has no ability to pay costs.”[13]
 Appellant made no assertion that she is receiving a government entitlement
based on indigency.  To otherwise show that she had no ability to pay costs, Appellant
had the burden to establish by a preponderance of the evidence that she would
be unable to pay the costs or give security for them if she really wanted to
and if she made a good-faith effort to do so.[14]  In determining whether
a party has the ability to pay costs, a court must look to the facts as a
whole.[15]

Appellant
asserted in her affidavit that she has a monthly income of $7,000.  She claimed
expenses of $6,754 a month, but a number of these expenses are, as Brownrigg
pointed out, optional.  For example, Appellant asserted that she pays $924 a
month for personal travel between McAllen and Dallas, $168 a month for a cell
phone service plan, and $180 a month for cable and Internet service.  Appellant
was able to obtain loans for both her vehicle and for her condominium.[16]
 Thus, Appellant’s own affidavit shows that she is not indigent.  Appellant
points to no other evidence in the record to establish her indigency.[17]
 Considering the record, we cannot say that the probate court abused its
discretion[18]
by sustaining Brownrigg’s contest to Appellant’s assertion of indigence.

Appellant
asserts that Brownrigg’s statements about her condominium and her right to a
cell phone and Internet service were unsworn and therefore not competent
evidence.  But Brownrigg’s statements were argument, not evidence.  He merely
made those statements in arguing that, on its face, the affidavit was defective.

Appellant
further argues that Brownrigg did not establish that he was competent to opine
about the real estate market.  But Brownrigg did not offer an opinion about the
real estate market.  Instead, he simply pointed out that Appellant’s own
affidavit showed that she was renting out her condominium at an amount that did
not cover the expenses that she listed for the unit.  Thus, Appellant’s
affidavit on its face shows that she is renting out her condominium at a loss,
just as Brownrigg stated to the probate court.

Appellant
also argues that Brownrigg implied that she was voluntarily spending $10,000 a
month on Internet and cell phone service rather than depositing $10,000 into
the registry of the court.  A review of the record shows that Brownrigg made no
such argument, expressly or by implication.  He merely pointed out that Appellant
had listed expenses for Internet service and cell phone service and argued that
these expenses were optional.  We overrule Appellant’s tenth issue.

In
Appellant’s sixth issue, she argues that the probate court erred by not
permitting her to make the required $10,000 deposit or in failing to provide
her sufficient time in which to do so.  But Appellant has not directed this
court to any place in the record showing that the probate court refused to
allow her to pay the $10,000 security for costs before striking her pleadings. 
And although Appellant claims she was not given sufficient time to provide the
security for costs, the record does not support her complaint.

Rule
143 of the rules of civil procedure provides that if a probate court orders a
party to provide security for costs and the party fails to comply “on or before
twenty (20) days after notice that such rule has been entered,” then that
party’s claims for affirmative relief “shall be dismissed.”[19] 
The probate court signed the order requiring Appellant to provide security for $10,000
in costs on January 11, 2011, and her then-attorney approved it as to form,
indicating that he at least had knowledge of the order.  And Appellant does not
claim that she did not receive notice of the order.  The probate court
dismissed her petition for failure to provide the security on February 8, 2011,
more than twenty days after the date that the probate court signed its order
and that Appellant’s attorney approved it as to form.  By rule, the probate
court provided Appellant sufficient time to provide the required security. 
Appellant did not ask the probate court for additional time to provide the
security.[20]  Nor did Appellant
provide the probate court with any reason why she could not provide security
within that time other than her affidavit of indigence, and this court has held
that the probate court properly dismissed that affidavit.  Finally, Appellant
made no argument to the probate court (and makes none in this court) about why
she needed more time.  Accordingly, we overrule this issue.

In
Appellant’s thirteenth issue, she asserts that the probate court abused its
discretion by basing its decision on no evidence.  In her fourteenth issue, she
argues that the probate court abused its discretion by basing its decision on
insufficient evidence.

The
nearest kin of an unmarried proposed ward is entitled to the guardianship if
that person is eligible.[21]  But the probate code also
requires the probate court to appoint a guardian for a person other than a
minor “according to the circumstances and considering the best interests of the
ward.”[22]  The code further
provides that a person may not be appointed guardian if that person is found
unsuitable by the court.[23]  Thus, if the evidence
supported the probate court’s finding that Appellant was not suitable as
Bryan’s guardian or that Appellant’s appointment as Bryan’s guardian of the
person was not in his best interest, the probate court did not abuse its
discretion by finding that she was not eligible to serve.[24]

The
record from the final hearing shows that Brownrigg produced evidence sufficient
to support the probate court’s finding that Appellant was not qualified to
serve as guardian of Bryan’s person.  The evidence showed that Bryan has mild
to moderate mental retardation and has diabetes, hypertension, and hyperthyroidism. 
The probate court heard testimony showing that Appellant was incapable of
following visitation guidelines set up by TDADS, even upon court order to do so,
and that Bryan’s behavior improved when his contact with his parents was
limited; that Bryan called 911 when he “was stressed” and had called 911 over a
hundred times in the year prior to his removal; and that Appellant could not
keep Bryan from calling 911 and had no concerns with him calling 911 repeatedly
in order to have someone to talk to.

The
probate court also heard evidence that Appellant had no concerns with Bryan
being left alone and unsupervised for extended periods of time or with him
being found wandering the neighborhood; that Appellant and Terry sometimes
failed to disclose to Bryan’s medical providers that he had diabetes and would
falsely state that he had not had any prior anger outbursts, and that when his
parents took him home from his group home for visits, they did not feed him a
diabetic diet and did not give him his diabetic medications.  The probate court
also had evidence before it showing that Bryan had at one point had his social
security and Medicaid benefits suspended because his parents failed to notify
the Social Security Administration of Bryan’s new residence after removing
Bryan from his group home.

Brownrigg
produced evidence that Appellant and Terry had a history of placing Bryan in a
group home and then removing him within a year, usually after the home
recommended that the parents limit their visitation due to the staff noting a
“link between the visiting and . . . [Bryan’s] escalation with his psychiatric
problems and their ability to manage him.”  Bryan had been forced to leave one
group home because his parents failed to pay the bills, failed to follow
visitation requirements, and would not release Bryan’s medical records to the
facility.  The evidence showed that Bryan’s parents had a pattern of not paying
the bills for his care providers.  Given the evidence before the probate court,
we conclude that the probate court did not abuse its discretion by appointing
TDADS rather than Appellant as guardian of Bryan’s person.

In
her arguments related to these issues, Appellant argues that the testimony of
the two witnesses called by Brownrigg at the final hearing was incompetent and
constitutes no evidence.  Regarding Buchan, Appellant asserts that Brownrigg failed
to establish her qualifications as an expert witness and that her testimony was
therefore incompetent.

The probate
court appointed Buchan as court visitor to visit and evaluate Bryan under
section 648 of the probate code.  Section 648 authorizes the probate court to
appoint a court visitor to evaluate the proposed ward and to provide a written
report.[25]  The code does not
require that the visitor be an expert, and Buchan did not testify as an
expert.  Buchan visited Bryan’s home, interviewed Bryan’s parents and employees
of Bryan’s current group home, and reviewed Bryan’s medical records.  Buchan
based her recommendation and her testimony on the information she gathered
during her investigation.  At no point did Buchan assert an opinion as an
expert or appear to be testifying as an expert.  Accordingly, we overrule this
part of Appellant’s thirteenth and fourteenth issues.

Appellant
further argues that Cross’s testimony was incompetent because she never
explained how she knew the information that she testified about.  She complains
about Cross’s testimony about Bryan’s living conditions with his parents, his
hospital placements, why Bryan left particular hospitals, and “other items
which occurred prior to the State’s involvement.”  With respect to the events
that “happened at various times during Bryan’s prior treatment,” Appellant
argues that “[u]nless [Cross] was living with Bryan’s parents in their home,
she could not have possibly known the statement she was testifying about.”

Cross
testified that she had reviewed boxes of documents relating to Bryan’s prior
medical care, and her statements about his hospital placements and his reasons
for leaving them were based on the documents that she reviewed.  To the extent
Appellant complains about any other parts of Cross’s testimony, Appellant does
not specify which part of Cross’s testimony she believes is incompetent.  We
overrule of Appellant’s thirteenth and fourteenth issues.

In
Appellant’s fifteenth and final issue, she asserts that the probate court
abused its discretion by denying her motion for new trial.  In her first argument
under this issue, she contends that she met the requirements to have a
post-answer default judgment set aside.

By
the time the hearing on the merits began, the probate court had already struck
Appellant’s pleadings, making the case uncontested as to Appellant.  But in any
case, Appellant has not shown that she meets the requirements for setting aside
a post-answer default judgment.

A
default judgment should be set aside and a new trial granted if the defendant’s
failure to appear was not intentional or the result of conscious indifference
but was the result of an accident or mistake; the motion for new trial set up a
meritorious defense; and granting the motion would cause no undue delay or
otherwise injure the plaintiff.[26]

In
her motion for new trial, Appellant did not make factual assertions that, if
true, demonstrated that her failure to appear was an accident or mistake rather
than intentional or the result of conscious indifference.[27] 
The record shows that she was aware of the hearing date but scheduled back
surgery for that day.  She did not assert in her motion that this surgery could
not be postponed or that she could not schedule the surgery for any other day. 
She stated only that she was absent “for health reasons.”

Even
if Appellant had established the first Craddock element, she failed to
establish a meritorious defense.  Appellant’s motion for new trial did not
allege facts that, under the law, would constitute a defense to Brownrigg’s
claim that she was unsuitable to be appointed as Bryan’s guardian and did not
allege facts concerning Bryan’s best interest in the appointment of his
guardian.  In fact, other than asserting that the hearing had been scheduled
for February 8, 2011 and that she had been absent from the hearing for health
reasons, she asserted no facts at all.  Even if she had alleged such facts, she
was required to support those facts with affidavits or other evidence but did
not.[28]

Appellant
further asserts that because of the probate court’s denial of her motion for
continuance, “[she] was unable to present her side of the story,” and therefore
the “merits would be served by a new trial.”  But as we stated above, the probate
court did not abuse its discretion by denying Appellant’s motion for
continuance.  Accordingly, we overrule Appellant’s fifteenth issue.

In
her conclusion and prayer, Appellant argues that the federal constitution
provides “a fundamental liberty interest of natural parents in the care,
custody, and management of their children.”  Appellant’s argument does not
relate to any of her issues.  Because Appellant is pro se, however, we briefly address
this argument to note that the cases cited by Appellant are inapplicable in the
context of this case: one case discussed constitutional requirements in
terminating parental rights;[29] one case upheld a
preliminary injunction enjoining the enforcement of an Oregon statute that
required parents to send their minor children to public school rather than to private
school;[30] and the third, a case
from the Georgia Supreme Court, discussed the constitutionality of Georgia’s
grandparent visitation statute, which granted any grandparent the right to seek
visitation of a minor grandchild.[31]  We overrule this
argument.

Conclusion

Having
overruled Appellant’s issues, we affirm the probate court’s order.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GABRIEL, JJ.

 

DELIVERED:  May 10, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. Civ. P. 251 (providing
that no continuance shall be granted “except for sufficient cause supported by
affidavit”).





[3]For example, Appellant’s seventh “issue” asks, “Does [I]nternet and
telephone service cost $10,000 per month?”





[4]But see Tex. R. App. P. 38.1(g) (“The
brief must state concisely and without argument the facts pertinent to
the issues or points presented.”) (emphasis added).





[5]See Tex. R. App. P. 38.1(i); Gray
v. Nash, 259 S.W.3d 286, 294 (Tex. App.—Fort Worth 2008, pet. denied)
(deciding that issues were waived because of inadequate briefing).





[6]One 1984 Ford, VIN No. 1FABP43F7EZ116686 v. State, 698 S.W.2d 279, 282 (Tex. App.—Fort Worth 1985, no writ).





[7]Erback v. Donald, 170 S.W.2d 289, 291–92 (Tex. Civ. App.—Fort Worth 1943, writ ref’d w.o.m.).





[8]See
Burke v. Scott, 410 S.W.2d 826, 828 (Tex. Civ. App.—Austin 1967, writ
ref’d n.r.e.).





[9]See
Tex. R. Civ. P. 251; Olivares v. State, 693 S.W.2d 486, 490 (Tex.
App.—San Antonio 1985, writ dism’d) (stating that “[w]hile appellant did attach
his own affidavit of the facts, he had no supporting affidavit from medical
personnel stating it was impossible, from a medical standpoint, for him to
appear in court”); see also Morrison v. Cogdell, No. 2-02-00261-CV, 2003
WL 21476243, at *2 (Tex. App.—Fort Worth June 26, 2003, no pet.) (mem. op.)
(stating that letters from the appellant’s doctors were not sufficient to
warrant a continuance).





[10]Cf.
Burke, 410 S.W.2d at 828 (reciting evidence showing that the appellant was
so ill that he was physically and mentally unable to undertake his defense and
that a key witness had suffered a heart attack and was confined to his home and
holding that the trial court should have granted the appellant’s motion for continuance).





[11]See State v. Crank, 666 S.W.2d 91, 94
(Tex. 1984).





[12]Tex. R. Civ. P. 145(a).





[13]Id.





[14]See Pinchback v. Hockless, 139 Tex.
536, 539, 164 S.W.2d 19, 20 (1942).





[15]Id.; Thomas v. Thomas, 852
S.W.2d 31, 36–37 (Tex. App.—Waco 1993, no writ).





[16]See Pinchback, 164 S.W.2d at 20
(stating that “if a party has a credit rating that will enable him to borrow
the money, . . . he should be required to pay the costs, or give security
therefor”).





[17]See id. (stating that when a party
files an affidavit of indigence and it is contested, the burden of proof is on
the applicant).





[18]See Basaldua v. Hadden, 298 S.W.3d
238, 241 (Tex. App.—San
Antonio 2009, no pet.) (applying abuse of discretion standard to a trial
court’s determination of a contest to an affidavit of indigence).





[19]Tex. R. Civ. P. 143.





[20]See Clanton v. Clark, 639 S.W.2d 929,
931 (Tex. 1982) (holding that the Clantons’ due process rights were not
violated by the dismissal of their claims for failure to file security within
twenty days of receipt of notice to do so and noting that they took no action
prior to the dismissal to secure an extension to give security).





[21]Tex. Prob. Code Ann. § 677(a) (West 2003).





[22]Id. 





[23]Id. § 681(8) (West Supp. 2011).





[24]See In re Guardianship of Alabraba,
341 S.W.3d 577, 579 (Tex. App.—Amarillo 2011, no pet.) (reviewing guardianship
appointment for abuse of discretion and holding that the trial court did not
abuse its discretion by finding that the mother was not eligible to serve as
her adult son’s guardian).





[25]Tex. Prob. Code Ann. § 648(b) (West 2003).





[26]Craddock
v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126 (1939); see
also Ivy v. Carrell, 407 S.W.2d 212, 214 (Tex. 1966) (applying Craddock
to post-answer default judgments).





[27]See
In re R.R., 209 S.W.3d 112, 115 (Tex. 2006) (stating that “[t]he defendant’s
burden as to the first Craddock element has been satisfied when the
factual assertions, if true, negate intentional or consciously indifferent
conduct by the defendant and the factual assertions are not controverted by the
plaintiff”).





[28]See
Ivy, 407 S.W.2d at 214; see also Estate of Pollack v. McMurrey, 858
S.W.2d 388, 392 (Tex. 1993).





[29]Santosky
v. Kramer, 455 U.S. 745, 102 S. Ct. 1388 (1982).





[30]Pierce
v. Soc’y of the Sisters of the Holy Names of Jesus & Mary, 268 U.S.
510, 45 S. Ct. 571 (1925).





[31]Brooks
v. Parkerson, 265 Ga. 189, 454 S.E.2d 769 (1995).